2005 UT App 409

**STATE of Utah, Plaintiff and Appellee,**

v.

**Bernadette DURAN, Defendant and Appellant.**

**No. 20040421–CA.**

Court of Appeals of Utah.

Sept. 29, 2005.

Samuel Bailey, Bailey & Torgenson PLLC, Price, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, McHUGH, and THORNE, JJ.

OPINION (For Official Publication)

McHUGH, Judge:

¶ 1 Defendant Bernadette Duran appeals the trial court's denial of her motion to suppress evidence. We reverse.

## BACKGROUND

¶ 2 On April 12, 2003, Lance Horvath's brother (Brother) met with Price City Police Officer William Barnes and communicated to Officer Barnes that Horvath appeared to be using drugs on Horvath's mother's (Mother) property. At the time, Horvath was residing in a camp trailer owned by Mother and located on Mother's property. Brother indicated that Mother was concerned that Horvath might "get busted" and cause the courts to seize Mother's property. Brother further informed Officer Barnes that Horvath had guns, had made threats against the police, and had indicated that he would "not be taken alive."

¶ 3 Ten days later, on April 22, 2003, Carbon County Sheriff's Officer Rick Anderson and Price City Police Officer Brandon Sicilia called Officer Barnes and reported that Mother and Brother had called them to report that there were people inside the trailer at that moment smoking marijuana. Mother and Brother also indicated that Horvath was not there and cautioned the officers about the guns inside the trailer. The telephone call to Officer Barnes occurred just after 4:00 p.m.

¶ 4 Officers Anderson, Sicilia, and Barnes met at Horvath's trailer at approximately 4:41 p.m. Brother reported to the officers that he had gained entrance to the trailer on a pretext and personally observed people "smokin' dope in there." Mother again raised concerns about having her property seized as a result of the drug activity in the trailer. She showed the officers her title to the trailer, indicated she was the owner of it, and gave written consent to the search of the property, including the trailer. At this time, Brother again cautioned the officers about the presence of guns in the trailer and urged them to be careful.

¶ 5 Relying on the consent obtained from Mother, the officers proceeded to conduct a warrantless search of the trailer. They knew that Horvath lived in the trailer, but was not there at the time of the search. Although Horvath had been paying rent to Mother and residing in the trailer for ten years, the officers believed he had been living in the trailer for only ten days. The officers also indicated that although they believed there were weapons in the trailer that could be used by anyone, Horvath was their greatest concern. When the officers approached, they could smell the odor of burnt marijuana coming from the trailer. The officers concluded that a crime was in progress and that the occupants of the trailer were in the process of "smokin' up the evidence." One of the officers also testified that he preferred to conduct a warrantless search when possible because obtaining a warrant required too much work.

¶ 6 Upon entry, the officers found controlled substances, two rifles, and a loaded handgun. Defendant and the other occupants of the trailer were detained and arrested.

¶ 7 On April 25, 2003, Defendant was charged with multiple crimes in connection with her arrest. Defendant subsequently filed a motion to suppress the evidence seized during the warrantless search of the trailer. At the hearing on this motion, Defendant testified that she had spent the night at the trailer on two occasions, including the night prior to her arrest. She also testified that she visited Horvath in the trailer daily and was given a key to the residence when Horvath was not at home. Defendant also testified that she moved freely about the trailer and stored some limited personal items there.

¶ 8 The trial court denied Defendant's motion to suppress, holding that, even if Mother's consent to search the trailer was not valid, the search should be upheld because Mother had "apparent authority" over the trailer. Defendant then entered a conditional guilty plea to two counts of unlawful possession or use of a controlled substance, one count a second degree felony and the other

count a class B misdemeanor, both in violation of Utah Code section 58–37–8(2). *See* Utah Code Ann. § 58–37–8(2) (Supp.2005). Her plea was conditioned upon the instant appeal of the trial court's denial of her motion to suppress.

ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant argues that the warrantless search was illegal because Mother did not have common authority over the trailer. The trial court denied Defendant's motion to suppress on the grounds that Mother had "apparent authority" to consent to the search. On appeal, the State does not seek affirmance on that ground, but instead argues that there were exigent circumstances that justified the warrantless search.[1]

¶ 10 We review the factual findings underlying the trial court's denial of Defendant's motion to suppress under a clearly erroneous standard. *See State v. Callahan,* 2004 UT App 164, ¶ 5, 93 P.3d 103. In contrast, we review "the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions." *State v. Anderson,* 910 P.2d 1229, 1232 (Utah 1996). In addition, "[b]ecause this case involves a search and seizure, we do not extend any deference to the trial court in its application of the law to its factual findings." *State v. Alverez,* 2005 UT App 145, ¶ 8, 111 P.3d 808 (citing *State v. Brake,* 2004 UT 95, ¶ 15, 103 P.3d 699). Furthermore, " '[i]t is well settled that we may affirm a judgment of a lower court if it is sustainable on any legal ground or theory apparent on the record.' " *State v. Comer,* 2002 UT App 219, ¶ 21 n. 8, 51 P.3d 55 (quoting *State v. Finlayson,* 2000 UT 10, ¶ 31, 994 P.2d 1243) (affirming trial court's denial of motion to suppress on alternate grounds).

ANALYSIS

I. COMMON AUTHORITY

¶ 11 A warrantless search is reasonable if it is conducted with the consent of the defendant or some other person who "possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The *Matlock* Court explained that a finding of common authority rests upon

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co[ ]inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. 988. To possess the necessary common authority, the third party must have both shared use of the premises and joint access or control. *See United States v. Salinas–Cano,* 959 F.2d 861, 864 (10th Cir.1992).

¶ 12 The State presented no evidence that would support a finding that Mother shared the use of the camp trailer.[2] For the past ten years, she had rented that trailer to Horvath. There is no evidence that Mother had a key to the trailer or that she could enter it when Horvath was not present. Without a showing of common authority, Mother could not give valid consent to the search.

II. REASONABLE BELIEF
OF THE AGENTS

¶ 13 The trial court found that Mother had "apparent authority" to consent to the search and that the officers reasonably relied on that apparent authority. We disagree.

¶ 14 In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148

---

**1.** Although the State raised the issue of exigent circumstances below, the trial court did not reach that argument because it held that the consent of Mother gave the officers "apparent authority" for the search.

**2.** The State bears the burden of proving common authority by a preponderance of the evidence. *See State v. Brown,* 853 P.2d 851, 855 (Utah 1992).

(1990), the United States Supreme Court held that

> in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

*Id.* at 185, 110 S.Ct. 2793. In determining whether the officers have acted reasonably, courts must evaluate the conduct under an objective standard. *See id.* at 188–89, 110 S.Ct. 2793. If the facts known to the officers would not cause a person of reasonable caution to conclude that the consenting party had authority over the premises, "then warrantless entry without further inquiry is unlawful unless authority actually exists." *Id.* Officers Anderson, Sicilia, and Barnes cannot meet this objective standard of reasonableness.

¶ 15 At the time of the warrantless search the officers knew that Horvath lived in the trailer owned by Mother. They asked no questions regarding Mother's mutual use of the trailer or her joint access to it. *See Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988 (citing *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and noting parenthetically that *Chapman* held that "landlord could not validly consent to the search of a house he had rented to another"). Instead, they relied solely on her proof of ownership. "Common authority is, of course, not to be implied from the mere property interest a third party has in the property." *Id.; see also State v. Brown,* 853 P.2d 851, 855 (Utah 1992) (" 'It is the right of possession rather than the right of ownership which ordinarily determines who may consent to a police search of a particular place.' " (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.5(b) (2d ed.1987) ) ).

¶ 16 The trial court found that the officers' reliance on Mother's authority was reasonable. We disagree. Although " 'room must be allowed for some mistakes' " on the part of officers executing their duties, the mistakes must be those of reasonable men, " 'acting on facts leading sensibly to their conclusions of probability.' " *Rodriguez,* 497 U.S. at 186, 110 S.Ct. 2793 (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). It was not reasonable to proceed with the warrantless search absent reasonable inquiry into Mother's mutual use of the trailer. *See State v. Davis,* 965 P.2d 525, 533 (Utah Ct.App.1998) (stating that the State's burden to prove common authority cannot be met " 'if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry' " (quoting *United States v. Whitfield,* 939 F.2d 1071, 1075 (D.C.Cir.1991)); *see also State v. Elder,* 815 P.2d 1341, 1344–45 (Utah Ct.App.1991) (concluding that officers could not reasonably believe that sister had authority to consent to search where sister's husband had to kick in locked door of crawl space).

¶ 17 The officers were faced with an ambiguous situation concerning the trailer. Although it was owned by Mother, it was rented to Horvath. Despite that ambiguity, the officers made no further inquiry and proceeded with the warrantless search.[3] The search was not lawful either under the consent exception to the warrant requirement or based upon the officers' reasonable belief that consent was valid.

### III. EXIGENT CIRCUMSTANCES

¶ 18 The State argues that the search should be found reasonable not under the apparent authority exception relied upon by the trial court, but instead because exigent circumstances justified the officers' warrantless entry. We disagree.

¶ 19 A warrantless search of a personal residence is constitutionally permissible if probable cause and exigent circumstances are proven. *See State v. Comer,*

---

**3.** Indeed, one of the officers testified that he preferred to conduct warrantless searches be-

cause obtaining a warrant involved too much work.

2002 UT App 219, ¶ 24, 51 P.3d 55. "The State bears the particularly heavy burden of proving the warrantless entry into a home falls within the exigent circumstances exception to the warrant requirement." *State v. Beavers*, 859 P.2d 9, 13 (Utah Ct.App.1993). "Exigent circumstances are those 'that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' " *Id.* at 18 (alteration in original) (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.1984)).

¶ 20 The State argues that Officers Anderson, Sicilia, and Barnes were justified in entering Horvath's trailer without a warrant because they could smell burning marijuana when they approached. The State argues that the smell of burning marijuana gave the officers probable cause to believe that a crime was being committed and created exigent circumstances because the evidence of that crime was being consumed. That argument has previously been rejected by this court.

¶ 21 In *State v. South*, 885 P.2d 795 (Utah Ct.App.1994), *rev'd on other grounds*, 924 P.2d 354 (Utah 1996), a police detective, Dennis Simonson, went to the defendant's home to investigate the theft of a cellular telephone. *See id.* at 797. While interviewing defendant at the door, Detective Simonson detected a heavy odor of burnt marijuana. *See id.* Based on that observation, he obtained a warrant to search the home and returned with three other officers. *See id.* The defendant moved to suppress the evidence seized during the search because the warrant authorized the search of the defendant, but not of the home. *See id.* The State claimed that, even though the warrant was defective, the warrantless search was justified by exigent circumstances. *See id.* at 799–800. The State argued that the smell of burning marijuana alerted the officers to the fact that a crime was being committed and that the evidence of that crime was being destroyed. *See id.* at 800. The *South* court disagreed, stating:

The State's concern that marijuana may be hidden or disposed of before officers obtain a warrant is outweighed by the concern that a warrantless search would violate the heightened expectation of privacy in a private home. Thus, we hold that although the plain smell doctrine provides officers probable cause to believe contraband or evidence of a crime may be found, it does not automatically provide officers with exigent circumstances justifying a warrantless search of a private residence.

*Id.* at 800 (footnote omitted). Finding that the officers could have secured the home while they obtained a warrant, the *South* court concluded that the search was unreasonable despite the odor of burnt marijuana detected by Officer Simonson. *See id.*

¶ 22 As in *South*, the warrantless search of Horvath's trailer was not justified by the odor of burnt marijuana detected by the officers when they approached the trailer. Although the smell of burning marijuana provided the officers probable cause that a crime was being committed, it did not create exigent circumstances that would permit a warrantless entry. One officer could easily have gone to procure a warrant while the others secured the premises. *See Illinois v. McArthur*, 531 U.S. 326, 331–33, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (concluding that a police seizure of defendant for two hours to prevent him from entering home and destroying marijuana evidence was reasonable). By doing so, the officers could also have prevented Horvath from gaining access to any weapons that might have been in the home.

## CONCLUSION

¶ 23 There is no evidence in the record to support a finding that Mother enjoyed mutual use of the trailer she rented to Horvath. Therefore, she did not have actual authority to consent to the search. Furthermore, the failure of the officers to make reasonable inquiry in the face of an ambiguous situation concerning the use of the trailer is fatal to a claim that they reasonably relied on Mother's consent. Finally, although the plain smell doctrine gave the officers probable cause to

search the trailer, it did not create the exigent circumstances necessary to relieve the officers of the obligation to procure a warrant prior to that search. We therefore reverse the trial court's denial of Defendant's motion to suppress and remand for proceedings consistent with this decision.

¶ 24 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.